## THE PEOPLE v. JOHN CAMPBELL.

STATEMENT OF A HYPOTHETICAL CASE IN CHARGING A JURY.—If the Court, in a
trial for murder, instructs the jury as to the abstract principle of the right of
taking life in self defense, and then states a hypothetical case falling within the
principle, the statement of the hypothetical case cannot be construed as telling the
jury that the right of taking life in self defense is confined to the hypothetical
case stated.

WHAT FORCE JUSTIFIABLE IN REPELLING AN ASSAULT.—A person assaulted is
justified in using so much force as is necessary to his defense. He will not be
justified in doing those acts which are calculated to take the life of his assailant
unless the assault is of such a character as to endanger his life, or to inflict on him
great bodily injury, or excite his fears as a reasonable man that such would be the
result of the assault.

LEGAL JUSTIFICATION OR EXCUSE FOR TAKING LIFE.—Query? In a trial for
murder, where the defendant claims that in taking the life of the deceased he
acted in necessary self defense, would the words "any legal justification or
excuse," in a proposed instruction to the jury, when applied to the act of killing,
necessarily mean "done in necessary self defense ?"

WHAT ASSAULT JUSTIFIES TAKING LIFE.—On a trial for murder, where the defense
is that the accused killed the deceased in necessary self defense, it is not neces-
sary that the jury should find that the killing was absolutely necessary beyond
the possibility of a doubt in order to acquit the defendant, but if they find that
the assault of the deceased was of such a character as to excite the fears of the
defendant as a reasonable man that the deceased would inflict on him great bodily
injury, he is entitled to an acquittal.

ERRONEOUS INSTRUCTIONS TO A JURY.—If the Court gives an instruction correctly
stating the law, and afterwards another nullifying the first, the judgment will be
reversed.

APPEAL from the District Court, Twelfth Judicial District,
City and County of San Francisco.

The first instruction asked for by the defendant's attorney
was as follows : '

"A person may defend himself by taking life, whether his

danger is real or not, if the danger is apparently so imminent and pressing that a prudent man might suppose himself in such peril as to deem the taking of the life of his assailant necessary to self preservation."

After giving the same, the Court added as follows :

" As, for instance, where A. threatened to take B.'s life at sight, which threat was known to B., and they afterwards met without design on B.'s part, and B., observing A. approach gun in hand, near by, with seeming hostile purpose, drew a pistol, fired, and killed A., and it afterwards was ascertained by B. that A.'s gun at the time of the conflict was not loaded, *that fact* cannot make B. guilty of crime."

The defendant was convicted of manslaughter, and appealed. The other facts are stated in the opinion of the Court.

*S. B. Axtell,* for Appellant.

*J. G. McCullough, Attorney-General,* for the People.

By the Court, RHODES, J. :

Indictment for murder. The defendant was convicted of manslaughter. The errors assigned relate to the instructions.

The defendant's counsel complains that the Court modified the first instruction requested by him, and limited the right of the defendant to take life in self defense, to cases where the assailant is armed with a deadly weapon and has previously threatened the life of the defendant. What the Court said in connection with the defendant's instruction was neither a modification nor a qualification of the instruction. It was merely a hypothetical case, stated as an illustration of the rule laid down in the charge, and the case stated was clearly within the rule. It was not intended to say, and the jury could not have understood the Court to mean, that the case was the rule, and that any case that did not contain all the conditions, facts, or qualities of the one given would not fall within the rule embodied in the instruction, for it was stated

40

only as an example, and to. make it the more apparent that such was the purpose, it began with the words " as for instance."

### Legal justification or excuse for taking life.

The Court was justified in refusing the defendant's sixth instruction. It first defines manslaughter substantially in the language of the statute, and states as an inference from the terms composing the definition, that if " the jury find that the prisoner had any legal justification or excuse for discharging his loaded pistol at the deceased, giving him thereby a mortal wound, they cannot find him guilty of manslaughter." It admits of doubt whether this is sufficiently qualified—whether *any legal justification or excuse* for the act means necessarily, that the act was done in necessary self defense. But passing that by, we come to that portion of the instruction which is the most objectionable. The instruction proceeds to give the reason for the inference, as follows : " For if the use of a deadly weapon be justifiable or excusable, any consequence resulting from its use will also be justifiable ; as the law does not attempt to measure the degree of force which a man may use to repel an assault, nor will it punish him if he use more than is absolutely necessary." It is an elementary principle in criminal law that the person assaulted, is justified in using so much force as is necessary to his defense. To repel a slight assault the person assaulted is not authorized to resort to measures of great violence. He will not be justified in doing those acts that are calculated to destroy the life of the assailant unless the assault is of such a character as to endanger his life or inflict on him great bodily injury, or to excite his fears as a reasonable man that such would be the result of the assault. And so in all cases of assault. The law limits him to such acts as are necessary to self defense. The law does measure the degree of the force that may be used to repel the assault ; and although it will not make the measurement with a nice hand and hold the person assaulted to

accountability for force slightly disproportioned to the assault, yet it will hold him responsible for a clearly marked excess.

### Taking life in self defense.

The defendant complains of this portion of the charge of the Court : " If you find from the proofs, and not from the assertions of counsel, that the accused was so controlled by fear of suffering great bodily injury at the hands of deceased at the time of the killing, so much so as to preclude the idea that he was actuated by malice, or had premeditation in the killing, and you further find that the killing was not in necessary self defense, then it is not legally in your power to find the accused guilty of murder in the first or murder in the second degree ; but it will be your duty to find him guilty of manslaughter." The Attorney-General upholds the portion of the charge cited, on the grounds : First—That it was not intended so much as a definition of manslaughter, as a warning against finding the defendant guilty of murder in the first or second degree, unless the facts warranted it. But, if while giving such warning, the law applicable to manslaughter was incorrectly stated, the error was as prejudicial to the defendant as if the primary object of the instruction was to charge the jury in respect to manslaughter : Second—That if the killing was not murder in the first or second degree, and was not done in self defense, it could be no less than manslaughter.

The proposition contained in the second ground generally stated is true, but it is not necessary, under the statutory rules found in sections thirty and thirty-one, that the jury shall find that the killing was absolutely necessary beyond the possibility of a doubt, for that could be made to appear only upon the infliction of the injury by the assailant, which the person assailed is permitted to protect himself against by killing the assailant. According to section thirty-one, it must appear that the killing was absolutely necessary—that is, it must so appear to the assailed—and this is guarded by section thirty, by which it is required that the circumstances—the

appearances—on which he acts must be such as are sufficient to excite the fears of a reasonable man, and not the mere apprehension, the bare fear of such injury.

The portion of the charge under consideration took away from the defendant all justification for the killing which the law accords to him, in case the jury should find that he was acting under the influence of fear of suffering great bodily harm at the hands of the deceased.

The Court had given an instruction, at the request of the defendant, embodying the provisions of sections thirty and thirty-one, so far as applicable to the case; but it was to some extent nullified by that portion of the charge last mentioned.

Judgment reversed and cause remanded for a new trial.

SAWYER, J., dissenting:

I think the charge was strictly correct, but have not time now to give my reasons. I must, therefore, dissent.