[Crim. No. 147.  Third Appellate District.—May 2, 1911.]

## THE PEOPLE, Respondent, v. KIJU SHIMONAKA, Appellant.

HOMICIDE — CHARGE OF MURDER — VERDICT OF MANSLAUGHTER.— The charge of murder necessarily includes the crime of manslaughter; and though the evidence is such as would sustain a verdict for murder, it is sufficient to sustain a verdict for manslaughter. The defendant is not entitled to be acquitted because the jury found him guilty of a less offense than the one charged and proved.

ID.—VERDICT AGAINST SELF-DEFENSE CONCLUSIVE UPON APPEAL.—Upon the issue of self-defense, the verdict against the defendant is conclusive upon appeal, where there is some evidence from which the jury might have concluded that defendant did not kill his adversary under such circumstances as the law would justify under the plea of self-defense.

ID.—INSTRUCTIONS AS TO SELF-DEFENSE—PROPER MODIFICATIONS.—Where the instructions as to self-defense were as favorable to that plea as the law would justify, the court properly modified a requested instruction as to the lawful pursuit of an assailant by stating that

"it must be carried no further than is reasonably necessary to free himself from danger," and also properly modified a requested instruction as to defense under "real or apparent danger," by stating that the self-defender "may use such force as is necessary to meet such danger, and no more. If he goes beyond this limit, he transcends the law of self-defense, and becomes himself a wrongdoer."

ID.—LIMITATIONS IN LAW OF SELF-DEFENSE.—Though the person assaulted may use so much force as is necessary to his defense, yet to repel a slight assault, the person assaulted is not authorized to resort to measures of great violence. He will not be justified in destroying the life of the assailant, unless the assault is such as to endanger his life or inflict upon him great bodily injury, or to excite the fears of a reasonable man that such would be the result of the assault. The law limits him to such acts as are necessary to self-defense, and will hold him responsible for a clearly marked excess.

ID.—REQUEST AS TO KILLING UNDER "SUDDEN JEOPARDY" PROPERLY REFUSED.—A requested instruction as to self-defense under necessity, which states, "as a matter of law, that absolute necessity is deemed to exist when one without fault is placed in sudden jeopardy," was properly refused. The defendant was not entitled to an instruction which left the jeopardy under which he would excuse himself entirely undefined. One may find himself in jeopardy which does not reasonably indicate real or apparent danger of his receiving great bodily injury, or justify the killing of one's assailant.

ID.—ERRONEOUS INSTRUCTION AS TO "MALICE" IN MURDER NOT PREJUDICIAL.—An erroneous instruction on the subject of "malice" in the definition of "murder" is not prejudicial, where the verdict is for manslaughter, in which the element of malice is not involved, and which included an acquittal of murder.

ID.—REQUEST AS TO SELF-DEFENSE ARISING UPON A SUDDEN QUARREL UPON A "MERE ALTERCATION OF WORDS"—PROPER MODIFICATION.— A requested instruction upon the subject of killing in self-defense against an assailant, as the result of a sudden quarrel upon a "mere altercation of words," was properly modified, by making it clearer that there must be some accompanying circumstances or acts of the assailant besides mere words before the taking of life in self-defense would be justified.

ID.—REQUEST AS TO "REASONABLE DOUBT"—PROPER MODIFICATION.—A requested instruction as to "reasonable doubt" that it need not result from defendant's testimony, but "may arise as well from the weakness or defect in the testimony introduced on the part of the prosecution" was properly modified by adding thereto, "a doubt to be reasonable is one which results or arises from a consideration of all the evidence in the case as heretofore defined in these instructions."

ID.—REQUEST INCLUDED IN CHARGE PROPERLY REFUSED.—The court properly refused a requested instruction elsewhere included in the charge.

ID.—REQUEST IN DIFFERENT FORM.—When a principle or proposition of law is once correctly stated in an instruction, it is not error to refuse its repetition in some other form, unless this other form is necessary to a proper conception of the principle as applicable to some phase of the case not covered by other instructions.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Ben Berry, and John Wilson, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

CHIPMAN, P. J.—Defendant was accused of the crime of murder and was found guilty of manslaughter, the jury recommending him to the mercy of the court. Defendant's motion for a new trial was denied by the court and it thereupon sentenced him to be imprisoned for the term of four years.

1. Defendant and deceased, Hikotaro Tenouye, Japanese laborers, were working on a ranch near the city of Stockton, being farmed by another Japanese, named Yosaka Noguchi. About 8 o'clock on the evening of June 8, 1910, they were in a so-called bunk-house where, with some other Japanese, they lodged. They got into a verbal controversy over the trifling question as to how many pounds constituted a load of hay, which led to an encounter but neither being injured. The bystanders separated them and defendant left the bunk-house. So far as appears, nothing had occurred, before this affray, to arouse a feeling of hostility toward each other. They had been acquainted only about three weeks. After defendant left the room, Tenouye sat down for a minute or two and then got up and followed after defendant, remarking, as he left, that he was going to "hit" defendant, but this was not said in defendant's hearing. Tenouye had no clothing on his person at the time except an overshirt and defendant wore only an overshirt and undershirt. There was evidence that neither

of them had any weapon at the time they left the bunk-house. Defendant went toward a shed where there were arrangements for bathing, passing through a building used as a dining-room and kitchen on his way. Tenouye followed after defendant and witness Matsuyama followed Tanouye not far behind him. Defendant passed out of the kitchen at the door opposite to the door where the three entered the kitchen. Matsuyama testified that as Tenouye passed out of the kitchen door toward the bath-house he saw defendant strike Tenouye with an ax, felling him to the ground, and while lying on the ground he struck him with the ax on the head and ran away. The first blow was in the lower part of the abdomen, cutting a wide and deep gash, though not necessarily fatal, as testified by the medical witnesses. The second blow crushed the skull and inflicted a mortal wound. Matsuyama, who was the only eye-witness to the homicide, called for help and Noguchi, the tenant of the farm, and others came at once and carried Tenouye into the house, where he died the next morning from the effects of the blow on his head, as testified to by the medical witnesses. Defendant fled on striking the second blow and was arrested the next day several miles from the scene of the homicide. Defendant testified that he had reached the bath-house and was preparing to take a bath when Tenouye came at him in a threatening manner with a club or stick and said, "I am going to kill you," or, "I am going to kill you one strike," and that he thereupon struck him in self-defense. Matsuyama testified that Tenouye had no club or stick, or other means of injuring defendant, in his hands; that he was only a few feet from Tenouye when the blow was struck and heard no words between them. It appeared that the body of Tenouye was found a few feet from the kitchen; that the bath-house was fifteen or twenty feet farther away. Defendant's account of the homicide cannot be reconciled with Matsuyama's. The jury must have accepted Matsuyama's testimony and they might well have found defendant guilty of a higher degree of crime than manslaughter.

Defendant's counsel advance the rather singular contention that the verdict is not supported because the evidence does not bring the case within the definition of manslaughter—first, because the killing was not involuntary; and, second, it was not voluntary manslaughter, which consists of the unlawful

killing of a human being without malice upon a sudden quarrel or in the heat of passion. "If, then," says the brief, "there does not appear to have been a sudden quarrel, and the defendant did not act in the heat of passion, the verdict would be unsupported by the evidence." Just what impelled defendant to kill Tenouye can only be surmised. The evidence justified the jury in finding that he killed him without apparent cause; that the killing was unlawful and under circumstances implying criminal intent. It would be a strange condition of the law that would acquit defendant because the jury found him guilty of a lesser crime than the one charged and proved. It is settled that the crime of murder necessarily includes the crime of manslaughter. (*People* v. *McFarlane*, 138 Cal. 481, [72 Pac. 48, 61 L. R. A. 245].)

Upon the issue of self-defense the verdict of the jury was against defendant and is conclusive upon this court, there having been some evidence from which the jury might have concluded that defendant did not kill his adversary under circumstances such as the law would have justified under the plea of self-defense.

Defendant complains of error in giving certain instructions for the people; in refusing certain instructions requested by him and in modifying certain others before giving them.

2. The instructions principally made the subject of objection relate to the law of self-defense. Instruction marked XII, requested by defendant, was as follows: "You are instructed that where one reasonably believes that another intends, and is about to commit some great bodily injury upon him, he may, in his defense, pursue and slay his adversary. But his pursuit must not be revenge, but must be prosecuted in good faith to the sole end of winning his safety and securing his life." To which the court added: "[and must be carried no further than is reasonably necessary to free oneself from danger]."

Instruction marked XXIII, given at the request of the prosecution, is referred to by defendant in this connection as being likewise objectionable, as shown in clause in brackets. It is as follows: "On the subject of self-defense, or justifiable homicide, the court further charges the jury that one of the prime objects of the law is the preservation of human life. That no human life shall be taken unnecessarily, is the policy

of the law. Every individual is entitled to his life, unless forfeited thereunder. He may forfeit the right to his life by the commission of a crime, or by such conduct toward another individual as will justify that individual in taking his life then and there. A person taking the life of another, under such circumstances, must be justified in doing it by the law of necessity. This necessity must be real, or apparently real. A person so taking life must believe that he is in danger of losing his own, or receiving great bodily injury. This belief must be founded on reason and entertained in good faith. In the effort to save his own life, or to avoid the infliction of great bodily injury upon him, the person in danger, real or apparently real [may use so much force as is necessary to meet such danger, and no more. If he goes beyond this limit, he transcends the law of self-defense, and becomes himself a wrongdoer]. He would not be justified under the law in taking life unless such taking of life was really or apparently necessary to save his own, or to avoid the infliction of great bodily injury upon him. But while the law is interested in the preservation of human life, still, as between a wrongdoer and an innocent person acting in good faith, and in a reasonable manner, the law will favor the latter and justify his conduct in taking life under such circumstances, if it were really or apparently necessary, and done in good faith, under an honest apprehension of danger to his own life, or of receiving great bodily harm.''

The argument is that under these instructions the jury were precluded from rendering a verdict of acquittal regardless of the facts, and that under no circumstances would one ever be justified in slaying his assailant; that he must act at his peril, carefully avoiding the use of more force than is necessary to disable his assailant, and if in striking the blow for his protection he should happen to use more than was necessary and kill his assailant, he would be accountable regardless of what the facts might be. We cannot see that these instructions can reasonably be said to so direct the jury. It will be noted that the court, very plainly, said to the jury, in the concluding part of instruction XXIII, that ''the law will favor the latter (the accused) and justify his conduct in taking life under such circumstances (i. e., circumstances indicating real or apparent danger of bodily injury), if it were really or

apparently necessary, and done in good faith under an honest apprehension of danger to his own life, or of receiving great bodily injury.''

The supreme court, in *People* v. *Campbell*, 30 Cal. 314, states the law as follows: ''It is an elementary principle in criminal law that the person assaulted is justified in using so much force as is necessary to his defense. To repel a slight assault the person assaulted is not authorized to resort to measures of great violence. He will not be justified in doing those acts that are calculated to destroy the life of the assailant unless the assault is of such a character as to endanger his life or inflict on him great bodily injury, or to excite his fears as a reasonable man that such would be the result of the assault. The law limits him to such acts as are necessary to self-defense. The law does measure the degree of the force that may be used to repel the assault; and although it will not make the measurement with a nice hand and hold the person assaulted to accountability for force slightly disproportioned to the assault, yet it will hold him responsible for a clearly marked excess.''

The instructions complained of do not, when fairly considered in their entirety, lay down a rule at variance with the foregoing and we think were properly given.

3. Error is claimed because the court refused instruction marked XXXIII, requested by defendant, as follows: ''The law does not weigh in too nice scales the conduct of the defendant, and say he shall not be justified because he might have resorted to other means to secure his safety, and while an assault with intent to kill must be under absolute necessity, actual or apparent, as a matter of law that absolute necessity is deemed to exist when one without fault is placed in sudden jeopardy.''

The court refused the instruction because ''argumentative and fully covered by other instructions.'' We do not think it a correct statement of the rule that the absolute necessity, justifying the taking of life, referred to is, ''as matter of law, deemed to exist when one without fault is placed in sudden jeopardy.'' One may find himself in jeopardy which does not reasonably indicate real or apparent danger of his receiving great bodily injury. But this is not the jeopardy contemplated by the law which would justify the killing of

one's assailant. The defendant was not entitled to an instruction which left the jeopardy under which he would shield himself entirely undefined.

4. Defendant requested an instruction declaring, with considerable particularity, the essential element of the crime of murder to be malice and defining malice. The court refused the instruction and gave the following: "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." It is conceded that as an abstract proposition this is correct, but it is contended that, as the court further instructed the jury that "a malicious and guilty intent, from the deliberate commission of an unlawful act, for the purpose of injuring another is conclusively presumed," there was prejudicial error in the instruction. The question is immaterial, since the verdict was for manslaughter in which the element of malice is not involved. An erroneous instruction touching the crime of murder, of which defendant was acquitted, was without prejudice.

5. The following instruction, marked X, was asked by defendant and was given as modified by the court: "A person may while engaged in a sudden quarrel be justified in killing another in self-defense, as, for instance, one party may assail another under such circumstances as to make it necessary for the other to kill in self-defense, or, such person being the aggressor, he may so conduct himself as to justify the other as a reasonable man in believing that it is necessary to so do in order to save himself from death or great bodily injury. In either event, the mere fact that the parties are engaged in a sudden quarrel, which may be a mere altercation of words, cannot deprive one of the right to defend himself against a real or apparent assailant." Added by court: "But mere words whether used in a sudden quarrel, or otherwise, never justify or excuse one in taking life; there must be some overt act or demonstration of force reasonably sufficient to cause the one doing the killing to believe, as a reasonable person, that his own life is in danger, or that he is in imminent peril of some great bodily injury."

It is contended that under this instruction the taking of life would never, under any circumstances, be justified because of words spoken; that the assailant might be known to

be armed and prepared to carry out his threat to commit some great bodily injury, but before the other party would be justified in going to extreme measures to protect himself he would have to wait until it was too late and his right would become unavailable. The court did not convey this meaning. The instruction, as requested, referred to the existence of circumstances which would justify the taking of life to save oneself from great bodily injury and, in the event of those circumstances appearing, "the mere fact that the parties are engaged in a sudden quarrel, which may be a mere altercation of words, cannot deprive one of the right to defend himself against a real or apparent assailant." The court simply makes it clearer that there must be some accompanying circumstances or acts of the assailant besides mere words before the taking of life in self-defense would be justified. In the case of *People* v. *Thomson*, 145 Cal. 717, 721, [79 Pac. 435], the court uses the language quoted in the concluding paragraph of the instruction as asked by defendant. But it must be read in the light of the facts in that case and there appeared much besides "a mere altercation of words" as the ground for defendant's action.

6. The defendant requested the following instruction which was modified and given as follows: "In order for the jury to have a reasonable doubt of the defendant's guilt, it is not necessary that such doubt should result from the testimony affirmatively produced at the trial on the part of the defendant. It may arise as well from, and be founded upon, the weakness or defect in the testimony introduced on the part of the prosecution. *A doubt to be reasonable is one which results or arises from a consideration of all the evidence in the case as heretofore defined in these instructions.*"

Defendant objects to the modification of the instruction as shown in italics. Defendant states his point thus: "If a doubt to be reasonable must result from a consideration of all the evidence, an acquittal would become impossible irrespective of what the facts may be. The jury are required to consider all the evidence, but a reasonable doubt may arise out of any part of the evidence *upon* a consideration of all the evidence."

The point sought to be impressed upon the jury by defendant was that he was not called upon to produce affirmatively

any evidence in order to create a reasonable doubt in the minds of the jury, but that such doubt might arise from the weakness of the case made by the people. It was proper for the court to remind the jury that a doubt to be reasonable must arise from a consideration of all the evidence, as the court had previously and very fully explained to the jury.

7. The court refused to give the following instruction, marked XXXII, requested by defendant: "The court instructs you that when a man exercises his right of self-defense he must be understood to act on the facts as they appear to him, and if without fault or carelessness he is misled concerning them, and defends himself correctly according to what he supposes the facts to be, he is justifiable, though the facts are in truth otherwise, and he really has no occasion for the extreme measure."

The court properly refused to give this instruction because included in instructions elsewhere given. It is urged that being admittedly a correct statement of the law it should have been given notwithstanding the principles contained in it had been elsewhere given. The court did not err. When a principle or proposition of law is once correctly and clearly stated in an instruction it is not error to refuse its repetition in some other form, unless this other form is necessary to a proper conception of the principle as applicable to some phase of the case not covered by other instructions.

Discovering no prejudicial error in the record, the judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.