[Crim. No. 3776.   Second Dist., Div. Two.   July 12, 1944.]

THE PEOPLE, Respondent, v. LESLIE ROBERT NUNN et al., Appellants.

Ward Sullivan and W. O. Graf for Appellants.

Robert W. Kenny, Attorney General, Bayard Rhone, Deputy Attorney General, Fred N. Howser, District Attorney and Jere J. Sullivan, Deputy District Attorney for Respondent.

MOORE, P. J.—Defendants were accused by indictment of three felonies; to wit: by counts (1) and (2), manslaughter, by count (3), a criminal conspiracy to violate division II, chapter 5, article 3 of the Business and Professions Code. A mistrial was declared as to the first two counts following the disagreement of jury. Defendants appeal from their conviction on the third. The grounds of appeal are (1) that the superior court lacked jurisdiction of the offense charged and (2) the refusal of certain proposed instructions constituted prejudicial error. The chapter involved is regulatory of the practice of medicine and its allied arts. The entire chapter comprises some 189 sections, the majority of which are wholly regulatory while others declare violations of the provisions of the chapter to be misdemeanors.

The offense charged is that on or about January 22, 1943, the defendants willfully conspired to cause the defendant Navarre who was a licensed chiropractor to advertise, practice and attempt to practice as a surgeon and to prescribe for diseases and physical conditions of divers and sundry persons and to administer various dangerous drugs specified in the indictment, during which time the said Navarre had no license for such practice. The overt acts alleged are that the two men entered into the conspiracy; that in pursuance there-

of defendant Nunn, a licensed osteopathic physician, frequented, and remained during business hours in, the office of Navarre in the city of Los Angeles; that during the period from January 22 to April 9, 1943, together they administered drugs by means of hypodermic devices and performed surgical operations upon divers and sundry persons.

The facts established by the witnesses at the trial and by the statements of the defendants given before the grand jury are that several patients were treated in the office by Navarre in Nunn's presence. Navarre owned the entire office equipment, surgical instruments and a black bag containing drugs, narcotics, ethyl chloride, labeline and other *materia medica*. With the knowledge and cooperation of Dr. Nunn, Navarre diagnosed and treated numerous patients who were ignorant of his being an unlicensed physician and surgeon. He introduced Nunn to many as his "assistant" or "my new associate." He made arrangements for a number of throat operations which he advised, administered thyroid treatments and throat medicines. He administered the anaesthetic to Nancy Kenny, Tommy Richmond and Johnny Booker as Nunn performed their tonsillectomies. In the course of the several operations Nancy's lower front teeth were knocked out and both Tommy and Johnny died. He took blood tests, lanced boils and used the hypodermic needle on many persons.

Doctor Nunn's testimony given before the grand jury proved his agreement to work for Navarre for $75 a week and twenty five per cent of operation fees; that he knew Navarre was a chiropractor only; that he saw Navarre diagnose and treat the patients and make arrangement for their surgery. Nunn had nothing to do with them until the time for operations which were prescribed by Navarre. All diagnoses were Navarre's. Nunn witnessed Navarre's application of ethyl chloride; observed his injections of atropine preliminary to the operations, as in the cases of the Richmond and Booker children, and knew that Navarre had no license to administer the anaesthetic, apply the hypodermic needle or give any drug that comes within *materia medica*.

Navarre verified to the grand jury his contractural arrangements as stated by Nunn; stated that he continued to diagnose some of his patients after employing Dr. Nunn and that in some instances he had recommended surgery; had given treatments of cold vaccines and whooping cough injections;

had administered the anaesthetic for operations for which he fixed the price, made arrangements and took the sole responsibility. Dr. Nunn had nothing to do with the examinations, the diagnoses or the price in the cases of the two little boys who died under operation. Navarre administered injections of atropine in both cases.

### THE SUPERIOR COURT HAD JURISDICTION

The crime charged is that of a conspiracy to violate the provisions of division II, chapter 5, article 3 of the Business and Professions Code. The conspiracy constituted an understanding or an arrangement whereby Navarre was to hold himself out and to practice as a physician and surgeon and to administer drugs. The contention of defendants is that the practice of medicine without a license is nothing more than a misdemeanor under the provisions of article 3, section 2141; that since section 2378 provides that a conspiracy to violate any provision of this chapter constitutes unprofessional conduct and since section 2426 makes it a misdemeanor on the part of anyone who violates the latter section, it must follow that there is no basis for accusing defendants of a felony based upon such conspiracy to violate the provisions of chapter 5. It is also argued that chapter 5 controls the general provisions of the Penal Code relating to conspiracies to violate the terms of chapter 5.

Such contentions are based upon a misconception of the breadth and scope of section 182 of the Penal Code. Sections 2137 and 2138, 2141 and 2426 of chapter 5 all forbid the practice of surgery and medicine by one who is unlicensed by the state, with specific exceptions noted in 2138. While it is true that chapter 5 does not by its terms make it a felony to enter into a conspiracy to violate any provision of that chapter, yet there is no language to be found there which may be reasonably construed as a repeal of the provisions of the general law on conspiracy. Section 182, Penal Code, declares that those persons who conspire:

"5. To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws,

"They are punishable as follows:

". . . When they conspire to do any of the other acts described in this section they shall be punishable by imprison-

ment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding $5,000, or both, and cases of such conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done.''

The quoted language of section 182 specifically confers jurisdiction upon the superior court. This construction is supported by the case of *People* v. *Bucchierre,* 57 Cal.App.2d 153 [134 P.2d 505], and by the case of *People* v. *Vanderpool,* 20 Cal.2d 746 [128 P.2d 513]. In the Vanderpool case at page 748 it was pointed out that by virtue of the designation of the phrase ''in this code'' the first penal paragraph of section 182 of the Penal Code is referable to conspiracy to commit felonies and acts injurious to the public morals only when the punishment for the commission of such felony or acts is prescribed by some provision of the Penal Code. But under all other circumstances the second penal paragraph of 182 controls. It was reasoned, therefore, that since the lending of money at excessive rates without a license is made a misdemeanor by the Small Loan Act and it is not made punishable by any provision of the Penal Code, then a conspiracy to commit it is punishable under the second penal paragraph of section 182 as either a felony or a misdemeanor and is one within the jurisdiction of the superior court. The conviction of Bucchierre was upheld upon the same reasoning and by the same authority after the defendant had been accused of a conspiracy to violate the Employment Agency Act by operating an agency without procuring a license therefor. Conducting an employment agency without first procuring a license was declared to come within the provisions of section 182. The Vanderpool case was reversed because of the failure of the Small Loan Act to specify the punishment for a violation of its terms. However, in the Bucchierre case it was held that the Employment Agency Act specifically defines a violation of the substantive act to be a misdemeanor and prescribes the punishment (Labor Code, § 1648) without reference to any section of the Penal Code. The court there declared (p. 165) that the provision for punishment in the Employment Agency Act differentiates it from the Small Loan Act and the holding in the Vanderpool case and concluded that inasmuch as punishment for a conspiracy to violate the Employment Agency Act was within the second penal paragraph,

section 182, the superior court had jurisdiction of the offense alleged in the indictment. In his concurring opinion in the Bucchierre case Mr. Justice Peters emphasizes that the Vanderpool case holds that if the conspiracy is to commit misdemeanors injurious to public morals that are made punishable by statute other than those contained within the Penal Code, the conspiracy can constitute a felony.

## No Error in Refusing the Instructions Proposed by Defendants

Defendants contend that they were prejudiced by the court's refusal to read certain proposed instructions with reference to the doctrine of circumstantial evidence. They erroneously argue that the judgment was based upon circumstantial evidence. It may be conceded that if all the proof had been circumstantial, instructions embracing the doctrines included in the proposed instructions might without any impropriety have been given. But they are met at the threshold with the proposition that the evidence was not wholly circumstantial but on the contrary was largely direct, as already shown by our abridgement of the testimony.

No conspiracy can be established unless some overt act thereof be expressly alleged and proved, although other overt acts not alleged may be given in evidence. (Pen. Code, § 1104.) The indictment in the instant case alleges three overt acts. Those alleged and many others were proved. The contention made by defendants is that there is no direct evidence to establish the crime charged. But the summary of the testimony shows that Nunn agreed to work for Navarre on a percentage basis knowing that Navarre had no license to practice surgery and medicine; that Nunn knew before he operated on the little boys that Navarre had administered atropine injections and that he had no license to do so or to use a hypodermic needle to administer drugs named in *materia medica*. Navarre admitted that while he had Nunn associated with him he gave cold vaccines, whooping cough and atropine injections and knew that he was not authorized to do these things as a chiropractor. The presence of the office with its surgical appliances, the black bag filled with medicines, narcotics, hypodermic needles and syringes and the stipulation that they all belonged to Navarre were direct and irrefutable proof. The testimony of Mesdames Rich-

mond, Booker, Tieman, Griep, Blair and of the Longuevans is direct and positive proof that the defendants knowingly worked together in the practice of medicine, with Navarre taking the lead, making the diagnoses, perfecting the arrangements, charging the fees. The case is not one of circumstantial evidence only. The overt acts were established by direct proof. While a conspiracy may be proved by circumstances from which it may be fairly inferred that the parties tacitly came to a mutual understanding (*People* v. *Yeager,* 194 Cal. 452, 484 [229 P. 40]), yet if the prosecution relies for conviction upon direct evidence and circumstances are shown as corroboration, an instruction on the law of circumstantial evidence need not be given. In fact the jury should not be told that the cause of the people is one of circumstantial evidence. In such cases it would be most mischievous to intimate to the jury that the state relies for conviction upon circumstantial evidence. (*People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545].) If indeed there is direct evidence against one accused of a conspiracy the defendant has no right to demand an instruction on circumstantial evidence. (*People* v. *Clark,* 145 Cal. 727, 728 [79 P. 434].) The mere fact that there is some circumstantial evidence in the record in corroboration of the direct testimony renders unnecessary and improper the giving of an instruction on circumstantial evidence. (*People* v. *Lonnen,* 139 Cal. 634 [73 P. 586].) In the case of *People* v. *Williams,* 134 Cal.App. 232, 236 [25 P.2d 259], the court approved of the rejection of an instruction on circumstantial evidence such as proposed by these appellants because there was direct evidence showing that the defendant had committed the offense. From the foregoing authorities it is clear that the court below properly rejected the proposed instructions with reference to circumstantial evidence.

By chapter 5, division II of the Business and Professions Code a chiropractor cannot legally practice surgery. His practice is limited to the arts taught in the school of the chiropractor. He may not invade the field of medicine or surgery or administer drugs or medicines included within *materia medica.* He is limited to the use of mechanical hygienic measures incident to the care of the body which do not invade the field of medicine and surgery. (*People* v. *Fowler,* 32 Cal. App.2d Supp. 737 [84 P.2d 326].) The practice of medicine

becomes unlawful when done or attempted by one not legally licensed. (*Pacific Employer's Insurance Co.* v. *Carpenter,* 10 Cal.App.2d 592 [52 P.2d 992]; *Painless Parker* v. *Dental Examiners,* 216 Cal. 285 [14 P.2d 67].)

### The Proposed Instructions were Erroneous

The first of the proposed instructions rejected by the court authorizes an acquittal "if any facts or circumstances of this case can by any reasonable construction" be explained consistently with innocence. The second proposed instruction directs an acquittal in a case of circumstantial evidence where the incriminatory circumstances are either denied by the accused or were explained in such a way as to render his guilt doubtful. Neither of the two instructions stated the law. The guilt of a defendant may be shown by either direct proof or circumstantial evidence which excludes every hypothesis except that of guilt. When reliance is placed upon circumstantial evidence only it is not essential that the inculpatory facts be absolutely incompatible with innocence in order to justify the inference of guilt. It is sufficient if the jurors are convinced by the evidence of his guilt to a moral certainty and beyond a reasonable doubt. (*People* v. *Borrego,* 211 Cal. 759, 764 [297 P. 17].)

As to the second proposed instruction, the defendant may be so contradicted by circumstances alone as to render his testimony incredible. As between his denials and the circumstances in proof it is for the jury to determine which is true. (*People* v. *Kiser,* 24 Cal.App. 540 [141 P. 1078].)

The third proposed instruction required that *each circumstance* in a chain must be established to a moral certainty and beyond a reasonable doubt. Such is not the law. A reasonable doubt that would warrant an acquittal must arise from "a consideration of all the evidence." (Pen. Code, §§ 1096, 1096a; *People* v. *Shimonaka,* 16 Cal.App. 117, 125 [116 P. 327]; *People* v. *West,* 34 Cal.App.2d 55, 59 [93 P.2d 153].)

All of the other proposed instructions which are the bases of assignments of error are either repetitious or argumentative and were therefore properly rejected.

The purported appeal from the order denying the motion in arrest of judgment is dismissed.

The judgments of conviction of both defendants and the order denying the motion of defendant Nunn for a new trial are affirmed.

Wood (W. J.), J., and McComb, J., concurred.