Statement of Facts.

[No. 794.]

# THE STATE OF NEVADA, RESPONDENT. *v.* GEORGE O'CONNOR, APPELLANT.

INDICTMENT—TIME OF COMMISSION OF OFFENSE.—The indictment charges: "That on the twenty-third day of February, A. D. 1876, or thereabouts, at the county of Storey, * * * without authority of law, and with malice aforethought, with a deadly weapon, to wit, a knife, the said George O'Connor then and there being armed, did, without authority of law and with malice aforethought, make an assault in and upon one John Winn, with intent to kill him, the said John Winn," etc.: *Held*, that the time when the offense was committed is alleged with sufficient certainty.

IDEM.—The words "and before the finding of this indictment," after the date alleged, though proper, need not necessarily be inserted in an indictment.

IDEM—STATEMENT OF OFFENSE CHARGED.—*Held*, that the indictment clearly charges an assault with a knife—a deadly weapon—with intent to kill.

MOTION IN ARREST OF JUDGMENT.—A motion in arrest of judgment can only be sustained upon the ground that the court has no jurisdiction over the subject of the indictment, or that the facts stated do not constitute a public offense. (1 Comp. L., 1918.)

RES GESTÆ.—Remarks made in the presence of a party concerning his own conduct are often material facts when his conduct becomes the subject of investigation, and are admissible in evidence as a part of the *res gestæ*.

ASSAULT WITH INTENT TO KILL.—The statute of 1873 embraces the crime of an assault with intent to kill in all cases where the killing, if effected, would be unlawful.

INSTRUCTIONS—DRUNKENNESS OF DEFENDANT.—Upon reviewing the instructions given and refused by the court, relating to the question of defendant's intoxication: *Held*, that the instructions given on this point were more favorable to the defendant than those which were refused.

REFUSAL OF INSTRUCTIONS—WHEN NOT ERRONEOUS.—It is not error to refuse an instruction which has already been given in substance, and in terms as clear, full, and favorable to the defendant as those in which the court is asked to repeat it.

APPEAL from the District Court of the First Judicial District, Storey County.

The instructions refused by the court upon the question of drunkenness, referred to in the opinion, read as follows:

"If the jury find that the defendant, at the time of the assault, had, by drinking intoxicating liquors, made himself incapable mentally of entertaining the intent to kill, then

he is not guilty, unless he had formed the intent to kill when mentally capable of entertaining it."

"The application of the rule that drunkenness is no excuse for crime to the case on hand would be that the drunkenness is no excuse for the assault, but if defendant is charged with a criminal intent accompanying the assault, this could not exist if he was too drunk to entertain it. The wrongful intent in drinking does not supply or aid the proof of an intent to kill."

The instructions given by the court upon this point, and referred to in the opinion of the court, read as follows:

"If the jury believe from the evidence that the condition of the prisoner, from intoxication, was such as to show that there was no motive or intention to kill the said John Winn, they may find the defendant guilty of a less offense embraced in that of the one charged in the indictment."

"In this case, the criminal intent is the essence of the crime, and in such a case the jury are to judge whether from intoxication, or other cause, there was a want of such criminal intent. The question is, did he know what he was about? If he did, and had the intent, he is guilty; if he did not, he is not guilty."

"The nature and essence of the crime charged depends upon the particular state and condition of the defendant's mind at the time of the assault, and drunkenness as a matter of fact, effecting such state and condition of the mind, is a proper subject for consideration and inquiry by the jury."

"In order to convict, the jury must find either that the defendant was in possession of his mental faculties, and entertained an intent to kill when the assault was made, or that he had formed this intent before he lost control of his faculties."

The other facts sufficiently appear in the opinion.

*L. T. Cowie*, for Appellant.

I. The court below erred in overruling the demurrer to the indictment, and the motion in arrest of judgment.

The formal part of the indictment is merely a conclusion of law, drawn from the facts stated in the body of the

same.   To compel a defendant to go to trial upon an indictment charging merely "an assault with intent to kill," without setting forth any of the acts constituting the offense, would and does necessitate his being prepared to disprove or rebut the commission by him of any or all acts towards the prosecuting witness which could possibly come within the offense charged.   The defendant does not know how the State will attempt to sustain their charge; they may introduce evidence to prove that the shot at A. B. with a pistol or a gun, or that he attempted to stab A. B. with a knife or with a sword, or that, being a much more powerful man than A. B., he attempted and tried to kill A. B. with his hands, or otherwise, without the use of any deadly weapon.   (*State* v. *Anderson*, 3 Nev. 254; *State* v. *Brannan, et al.*, 3 Id. 238; *State* v. *Rigg*, 10 Id. 288; 1 Wharton Crim. Law, secs. 284–285, note 1; 30 Cal. 214.)

II.   The offense charged in this case is an attempt to commit a higher crime than the one charged, as shown by the definition of attempt as given by Bishop, in first volume Criminal Law, sec. 659.

III.   In regard to the question of time, see Criminal Practice Act.   (*State* v. *Brannan, et al.*, p. 240.)

IV.   The court erred in overruling the objection to and the motion of the defendant to strike out the evidence of the witness Waddell, and in allowing the same to go to the jury. Hearsay testimony is inadmissible.   The declarations of a third party are immaterial and irrelevant.   It was not the best evidence.   If any person made use of any language at that time and place it was the duty of the prosecution, if they desired to prove the fact as stated, to produce that person as a witness, and confront him with the defendant, so that the defendant might have some opportunity to disprove or rebut it.   How did the person whom the witness heard make the remark know that the defendant had gone for a knife?   Had not the defendant a right to have that person's name, have him produced in court, subject him to a cross-examination, test his veracity, and if necessary, introduce testimony to impeach him?   Again, how was the defendant to discover that the witness was telling the truth

or a falsehood, when he said that he heard somebody else say, etc.?

V. The court below erred in refusing to give the instruction asked by defendant, to the effect that "the jury must find the intent to kill under circumstances which, if death had ensued, would have made the killing murder; if they do not so find, they may find guilty of assault and battery or acquit." (Crim. Pr. Act, sec. 235; *State* v. *O'Flaherty,* 7 Nev. 157; 2 Whart. Crim. L., secs. 1279–1283; *Maher* v. *People,* 10 Mich. 212; *Roberts* v. *People,* 19 Mich. 415.)

VI. The court erred in refusing to give the instructions asked by defendant upon the question of drunkenness. (1 Bish. on Crim. L., sec. 408, 413; 1 Whar. Crim. L., secs. 41 to 44; *Roberts* v. *People,* 19 Mich. 401.)

*J. R. Kittrell, Attorney-General, and Lindsay & Dickson,* for Respondent.

I. The indictment substantially conforms to the form prescribed in the criminal practice act, and is sufficient. (1 vol. C. L., sec. 2352; *People* v. *Logan,* 1 Nev. 115; *People* v. *Swenson,* 48 Cal. 388.)

II. If the instruction in regard to intoxication or drunkenness be abstractly correct as propositions of law, still there is no testimony contained in the transcript tending to show that defendant, at the time of the commission of the offense, was either drunk or sober. The record should contain enough testimony to give point to the instructions. The court having refused to give these instructions, the presumption is, that they are not applicable to the case, and were properly refused. (*State* v. *Waterman,* 1 Nev. 543; *People* v. *Sanches,* 24 Cal. 17; *People* v. *Byrnes,* 30 Id. 206; *People* v. *Roberts,* 6 Id. 214.)

III. The last instruction asked by the defendant, and refused by the court, does not correctly state the law. The intent to kill need not be specifically proven. Where an unlawful act is proven to have been done by the accused, the law presumes it to have been intended; and the proof of justification or excuse lies on the defendant. (*People* v. *Harris,* 29 Cal. 678.) The question of intent is a matter of

which the jury is the exclusive judge. They are to determine that question from the character of the assault, the character of the weapon, the manner of its use, and the circumstances attending the assault. Criminal intent is a fact for the jury, to be established, like any other fact, by proof positive, circumstantial, or presumptive. (1 Whar. C. L., secs. 631, 712; 8 Cal. 547.)

By the Court, BEATTY, J.:

The defendant was convicted of an assault with intent to kill, and appeals from the judgment. His first point is, that the district court erred in overruling his demurrer to the indictment. Omitting the title and other formal parts, the indictment reads as follows: "George O'Connor is accused, by the grand jury of the county of Storey, by this indictment, of the crime of an assault with intent to kill, committed as follows, to wit: That on the twenty-third day of February, A. D. 1876, or thereabouts, at the county of Storey and state of Nevada, without authority of law, and with malice aforethought, with a deadly weapon, to wit, a knife, the said George O'Connor then and there being armed, did, without authority of law, and with malice aforethought, make an assault in and upon one John Winn, with intent to kill him, the said John Winn. Contrary to the form," etc. The objections to this indictment, specified in the demurrer, are as follows: First. "That it is not direct or certain with regard to the date of the commission of the offense, nor is it direct or certain as to the crime or offense charged. It charges that an assault was committed by defendant upon one John Winn, and also charges, that said defendant was armed at the time with a deadly weapon, but it does not charge that the defendant used, or attempted to use, said weapon upon said John Winn. It, therefore, fails to charge, except by way of averring a conclusion of law, that any offense other than that of an assault simply, was committed." Second. "That it cannot be understood therefrom, that the offense was committed prior to the finding of said indictment." The second of these objections, and the first part of the first one, may be considered together. It is

conceded that the sufficiency of the indictment is to be tested by its conformity to the provisions of the criminal practice act, and both objections involve a construction of the same sections of that law.

The form of an indictment is prescribed by section 235, and so far as the allegation of the time when the offense was committed is concerned, has been literally followed in this case.    Section 239 provides that "the precise time at which it was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding of the same, except when the time is a material ingredient of the offense."    In view of these provisions of the statute, it is plain that the time when the offense was committed is alleged with all the certainty and definiteness that either the letter or the spirit of the law requires.    But it is strenuously contended that, as this indictment was presented on the twenty-sixth of February, and must have been found before it was presented; and since the words "on the twenty-third day of February, A.D. 1876, *or thereabouts*," include, in their natural import, at least two or three days before and after the twenty-third, there is no certainty that the indictment was found after the offense was committed.    It is insisted that, in order to make it conclusive on this point, it was necessary to have inserted, after the words above quoted, these additional words: "And before the finding of this indictment."    We are aware that it is not an unusual practice to include these words by way of extra precaution, but we think it is entirely unnecessary to do so.    No such words are used in the form prescribed by the statute, and there is nothing in any other provision of the statute requiring any amplification of the prescribed form in this particular.    Section 241 provides that "words used in an indictment shall be construed in the usual acceptance in common language, except such words and phrases as are defined by law, which are to be construed according to their legal meaning."

There is no peculiar legal meaning to the tenses of the verb and the words "did assault," in their usual acceptance in common language, describe a past transaction with just

as much certainty as if they were qualified by the phrase, "and before the finding of this indictment." In regard to the second part of the first objection to the indictment, it is necessary only to say that it depends upon an inadmissible construction of the language used. It is manifest that the intention of the pleader was to charge an assault with a knife, and that is what any person of plain understanding would construe it to mean, but counsel for appellant contends that under a strict grammatical analysis, it means only this: that defendant being at the time armed with a knife, made an assault, but not necessarily with the knife. In order to reach this construction he reads the indictment as if the words, "with a deadly weapon, to wit: a knife, the said George O'Connor then and there being armed," were included in parentheses. But this cannot be, for if they were so divided from the balance of the sentence, the predicate "did assault," etc., would be left without any subject. Put the words "George O'Connor" in parentheses, and it is not alleged that anybody did assault; and the whole indictment becomes utterly meaningless. It cannot be denied that the language of the indictment is rather awkward and involved, but we think the criticism that would deprive it of any meaning whatever is rather too destructive. It is a more reasonable construction to simply reject the words "then and there being armed," as wholly unnecessary to its sense. This leaves an indictment clearly charging an assault with a knife—a deadly weapon—with intent to kill. That such an indictment is sufficient, see *State* v. *O'Flaherty*, 7 Nev. 157; *State* v. *Rigg*, 10 Nev. 288.

Second. The defendant also moved in arrest of judgment on the ground that this indictment charges two offenses: First, an assault; and, second, as a conclusion of law, an assault with intent to kill. We do not think the indictment is chargeable with this fault, but if it was, it would be no ground for a motion in arrest of judgment, which can only be sustained upon the ground that the court has no jurisdiction over the subject of the indictment, or that the facts stated do not constitute a public offense. (See Statutes of 1875, page 119, sec. 8, and Comp. Laws, sec. 1918.)

Third. The bill of exceptions shows that during the progress of the trial one of the witnesses was allowed to give the following testimony against the objection of the defendant: "And the next thing I heard somebody saying, 'John, you had better get out of the way; he has gone for a knife.'" The grounds of the objection to this testimony, specified at the time, are that it is immaterial, irrelevant, and hearsay. The court overruled the objection, and refused to strike out the testimony, upon the ground that it appeared to be part of the *res gestæ*. From all that appears, the court was perfectly right in its ruling. If, as seems probable, the witness was describing the circumstances of the assault, and testified to this language having been used at the time of the assault, and in the presence and hearing of the defendant, it was not hearsay evidence of the fact that the assault was made with a knife, but was direct evidence of another fact that may have had very important bearings upon the attendant circumstances. Remarks made in the presence of a party concerning his own conduct are often material facts, when his conduct becomes the subject of investigation. And in this case it is not difficult to imagine a great many ways in which the exclamation testified to may have influenced or given character to the subsequent acts of the defendant and of the party assailed. It was therefore a part of the *res gestæ*, and, as such, was properly admitted.

Fourth. The court refused four of the instructions requested by the defendant, and this action is assigned as error. The first of these instructions was as follows: "To find the defendant guilty as indicted, the jury must find the intent to kill, under circumstances which, if death had ensued, would have made the killing murder; if they do not so find, they may find guilty of assault and battery, or, acquit." This instruction does not present the law of the case, even if the appellant's interpretation of the statute were correct. But he is mistaken in supposing that the statute only embraces assaults with intent to kill, where the circumstances are such as would make the killing murder. By the act of 1861, a penalty was prescribed for assault with intent to commit *murder*. In 1873, the section con-

taining this provision was amended by substituting "assault with intent to *kill*," showing clearly that the design of the legislature was to impose the prescribed penalty in all cases where the killing, if effected, would be unlawful. It may be true, as counsel contends, that this indictment charges an attempt to murder; but certainly that does not make it any the less a good indictment for an attempt to kill; and as the penalty is the same in all cases, it would have been worse than useless to ask the jury to make a special finding as to what the grade of the homicide would have been if the person assaulted had been killed.

The second and third instructions refused were to the effect that if the defendant, at the time of the assault, was so drunk as to be incapable of forming or entertaining an intent to kill, he could not be convicted as charged. It is a sufficient reason for sustaining the refusal of the court to give these instructions, that there is not a particle of evidence contained in the record going to show that the defendant was intoxicated at the time of the assault. It is true that the court, at the request of the defendant, gave other instructions, to the effect that if the defendant was found, on account of intoxication or other cause, not to have entertained an intent to kill, he could not be convicted of the crime charged. This does prove that there must have been *some* evidence of intoxication, but it does not prove that there was any evidence of such a degree of intoxication as would have rendered the defendant incapable of entertaining or forming an intent to kill.

Besides, the instructions which the court gave on this point were more favorable to the defendant than those which were refused. The jury were instructed that the intent—the state and condition of the defendant's mind—was the very essence of the crime charged, and that drunkenness, as a fact affecting such state or condition of mind, was a proper subject for their consideration; that if he had no intent to kill he could not be found guilty as charged. An instruction which tells a jury that they cannot convict, if, for any reason, they find that the defendant did not intend to kill, is certainly more favorable to him than one which

tells them they cannot convict if, for some particular reason, they find he could not form such an intent.   The former proposition includes the latter and much more, and the fact which it assumes—absence of intent—is more credible, and therefore more easily proved, than a total incapacity to form an intent.   If this is true, the appellant has no ground of complaint; for it has been frequently decided in California, and assumed, if not expressly decided, in this state, that it is not error to refuse an instruction which has already been given in substance, and in terms as clear and full, and favorable to the defendant as those in which the court is asked to repeat it.   In the case of the *State* v. *Bonds* (1 Nev. 35), it was decided that the refusal, in the presence of the jury, of an instruction manifestly proper and applicable to the case, was an error, which was not cured by the giving of another to the same effect but expressed in different language;   because its refusal in the presence of the jury, without explanation, had a tendency to raise a presumption in their minds that it was not the law. In the case of the *State* v. *Ferguson*, (9 Nev. 118.) this court, referring to *State* v. *Bonds*, remarked in passing, but without deciding or having occasion to decide the point, that "If an instruction is refused because its substance has been given by the court, that fact should be stated and noted on the instruction, otherwise it might be such an error as to deprive the defendant of a substantial right."   It will be observed that the court in this case expressed itself very cautiously, to the effect that the unexplained refusal of an instruction might, under some circumstances, prejudice the defendant, notwithstanding its substance had been given already.   And it is undoubtedly true that, in a case where the proceedings are as anomalous as they seem to have been on the trial of Bonds, a defendant might be prejudiced in the manner there pointed out.   But no such proceedings are contemplated by the statute, and it is safe to say they are very unusual.   It is provided by sections 387 and 388 of the criminal practice act (C. L. secs. 2011, 2012) that either party may present to the court any written charge and request it to be given, and the decision of the court

must be made by endorsing its allowance or rejection upon each charge so presented. The usual and proper practice is in accordance with the plain import of these provisions. The instructions which either party wishes to have given are written out and presented to the court. The court endorses upon each one of them the word "allowed" or "refused" as the case may be, and signs his name under the endorsement. The instructions which are allowed are read to the jury, and are usually taken with them when they retire to consider of their verdict.

But the instructions which are refused are simply filed with the clerk and are never seen or heard read by the jury. In such case, it is obvious that the defendant is not prejudiced by a failure on the part of the court to explain that an instruction is refused only because it has been already given. Not knowing that the instruction has been refused the jury need no explanation of the reason why it has been refused. If the judge reads a correct instruction aloud to the jury and announces that it has been refused, without saying why, that might prejudice the case of the party which has asked it. But it does not appear that anything of the kind took place in this instance and certainly it cannot be presumed. There was no error therefore in the action of the court, and the appellant was in nowise prejudiced thereby. The notion that the failure to explain the reason for refusing an instruction will make that error which otherwise would not be an error seems to have originated in California in the case of the *People* v. *Hurley* (8 Cal. 392), where it is expressly based upon the assumption that the jury are aware of the contents of the instruction so refused. Whether at that time there existed any ground for such an assumption it is not important to inquire. It is at least certain that there is no ground for such an assumption now existing in the law or practice of this State. And in California the doctrine of the *State* v. *Hurley*, after being followed for a time (*People* v. *Ramirez*, 13 Cal. 172; *People* v. *Williams*, 17 Cal. 148), has in the later cases been quietly ignored. Nevertheless, it would be well if the suggestion of this court in the case of the *State* v. *Ferguson*,—that the rea-

son for refusing the instruction should be noted thereon by the district judge—were generally observed.   For a defendant might appeal without making any bill of exceptions, and in that case the charge of the judge would form no part of the record, whereas the instructions refused by him would come before us for review, and if we found that an instruction, manifestly correct and applicable to the case had been refused, and had no means of knowing that an equivalent instruction had been given, we might be compelled to reverse the judgment for a reason that in fact did not exist. In this case, however, there was no danger of that sort since the instructions presented by the defendant and allowed by the court covered everything embraced in those which were refused.

The fourth and last instruction refused by the court is as follows: "When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury as matter of fact before the jury can find a verdict of guilty."

We see no reason for refusing this instruction unless it is susceptible of the construction that the defendant could not be found guilty of *any* offense unless the intent to kill was proved to the satisfaction of the jury.   It does perhaps bear that construction though such is not its most obvious meaning.   If it had been the only instruction which presented the law upon this point, the slight ambiguity in the latter part of it might not have justified the court in refusing it, but as the same proposition is clearly embraced in three or four other instructions asked by the defendant and allowed by the court it was right to refuse it if it had any tendency to mislead or confuse the jury.   And besides, even if it had not the slightest tendency to mislead the jury, although, on that supposition its refusal was erroneous, still the error was not prejudicial for the reasons given above. The same proposition had been stated to the jury over and over again, not in language chosen by the court, but in language of the defendant's own choosing.

The judgment of the district court is affirmed.