# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

#### OF THE

## STATE OF NEVADA.

## JANUARY TERM, 1878.

13  17
14  126
16  215

13  17
25  471

[No. 861.]

## THE STATE OF NEVADA, RESPONDENT, v. J. W. RO-VER, APPELLANT.

RECORD IN CRIMINAL CASE.—The record in a criminal case consists only of such matter as is required by sections 450 and 480 of the criminal practice act. (1 Comp. Laws, 2075, 2105.)

IDEM—CLERK'S FEES.—A clerk, in preparing a transcript on appeal, is only entitled to receive pay for copying such papers, documents and statements as are provided for by said sections.

POWER OF COURT TO GRANT A NEW TRIAL.—The supreme court has the power to grant a new trial in a criminal case, although not asked for by the defendant. (*State* v. *Rover*, 10 Nev. 388, affirmed.)

STATEMENT OF DEFENDANT ON PRELIMINARY EXAMINATION—HOW TAKEN AND WHEN ADMISSIBLE IN EVIDENCE.—The committing magistrates may select clerks to write out the testimony taken on preliminary examination; and when the provisions of the law for taking such testimony have been complied with, the statement then made by defendant is admissible in evidence against him upon the trial of the case.

PROSECUTING WITNESS—WHEN ALLOWED TO GIVE HIS REASONS FOR FILING A COMPLAINT AGAINST THE DEFENDANT.—When the defendant, on his preliminary examination, makes a statement accusing the prosecuting witness of the commission of the crime for which the defendant is afterwards indicted: *Held*, that the prosecuting witness may, upon the trial, give in evidence the declarations of third persons made to him prior to the filing of the complaint, for the purpose of explaining his conduct to the jury. (By Hawley, C. J.)

VOL. XIII.—2.

ORDERS MADE ON SUNDAY—AUTHORITY OF COURT.—The provisions of the statutes of this state (1 Comp. L. 955) authorizing the court "to receive a verdict or discharge a jury" carries with it the power to have the verdict recorded, and authorizes the court to make such other orders as may be incident to the power given, such as designating a day when it would pronounce judgment upon the verdict.

REFUSAL OF AN INSTRUCTION ALREADY GIVEN IN SUBSTANCE BY THE COURT IS NOT ERROR. (*State* v. *O'Connor*, 11 Nev. 416, affirmed.)

INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE—MEANING OF WORDS "ABSOLUTELY INCOMPATIBLE."—The court refused to give the following instruction: "In order to justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt:" *Held*, that the words "absolutely incompatible," as contained in the instruction, imply that the proof of defendant's guilt must be established beyond the possibility of a doubt, and for that reason the court did not err in refusing the instruction.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The defendant was convicted of murder in the first degree. The facts appear in the opinion.

*T. W. W. Davies*, for Appellant.

I. The court erred in denying the defendants motion to be discharged on the ground of former jeopardy. (*The State* v. *Rover*, 10 Nev. 388; *The People* v. *Webb*, 38 Cal. 479; *Ex parte Maxwell*, 11 Nev. 418; cases cited in petitioner's brief: 11 Nev. 420; *O'Leary* v. *People*, 4 Parker Cr. 187; *State* v. *Brannon*, 55 Mo. 63; *State* v. *Pitts*, 57 Mo. 85.)

II. The court erred in admitting the paper purporting to be the statement of the defendant on his preliminary examination before the committing magistrate. (1 Comp. Laws. 1778–1786.)

III. The court erred in permitting the witness McWorthy to detail conversations and statements of other persons not under oath.

IV. The court erred in giving the instruction of its own motion concerning "provocation," and concerning "murder

in the second degree." (*People* v. *Murray*, 41 Cal. 67; Rule 4, Wills Cir. Ev. 171; Rule 2, Burrill on Cir. Ev.)

V. The recording of the verdict, asking the jury if the verdict as recorded was their verdict, fixing a time at which the time for pronouncing sentence would be set, remanding the defendant to the custody of the sheriff, and adjourning court, were all judicial acts not authorized by law to be done on Sunday, which is a non-judicial day. (*Read* v. *Commonwealth*, 22 Gratt. 924.)

VI. If any error intervenes in the proceedings, it is presumed to be injurious. The prisoner is entitled to stand upon his strict legal rights, and to be tried according to law. (*People* v. *Williams*, 18 Cal. 187; *People* v. *Ybarra*, 17 Id. 171.)

*W. S. Bonnifield*, also for Appellant.

*John R. Kittrell*, attorney-general, and *Wm. Cain*, for Respondent.

I. The Court did not err in admitting the statement of J. W. Rover, made before the examining magistrate. (1 Greenleaf on Ev., secs. 201, 218, 224; 1 Phillips on Ev., secs. 442, 445, 446; *State* v. *Lamb*, 28 Mo. 218.)

II. The court did not err in allowing the witness McWorthy to answer the question: "What caused or induced you to make the complaint that Rover had murdered Sharp?" (1 Greenleaf on Ev., sec. 218.)

III. Such evidence is not hearsay, but original and material evidence. (1 Greenleaf on Ev., sec. 100, 101; 1 Wharton Cr. Law, sec. 663; 1 Philips on Ev., sec. 139, note; Bacon's Abr., Vol. 3, 629, 630; *State* v. *Fox*, 25 N. J. 566; *People* v. *Thea*, 8 Cal. 538; *Carico* v. *Commonwealth*, 7 Bush. Ky. 124.)

IV. The degree of murder need not be designated in the indictment. (*People* v. *King*, 27 Cal. 507; *People* v. *Nichol*, 34 Id. 211; *State* v. *Huff*, 12 Nev. 140.)

V. Instruction number two asked by defendant, is erroneous. (*People* v. *Dick*, 32 Cal. 215; *People* v. *Cronin*, 34 Id. 201; *People* v. *Murray*, 41 Id. 67.)

. By the Court, HAWLEY, C. J.:

When the transcript on appeal in this case was filed in this court it contained over eight hundred pages. Upon the oral argument it was ascertained that the clerk, at the request of counsel, had, with other irrelevant matter, inserted all the testimony submitted at the trial, although not embodied in any bill of exceptions.

At the close of the argument we made an order that the transcript be returned to the clerk of Washoe county, with instructions to eliminate therefrom all matters contained therein that were not, by the provisions of sections 450 and 480 of the criminal practice act (1 Compiled Laws, 2075, 2105) made part of the record in a criminal case. It came back with only one hundred and fifteen pages, and still contains an affidavit made by T. W. W. Davies, of counsel for appellant, setting forth what is claimed to have been an irregularity upon the part of the counsel for the state in his closing argument to the jury, and the instructions given to the jury by the court of its own motion.

These ought not to have been included in the transcript, because not embodied in any bill of exceptions.

After what has been said by this court in *The State* v. *Forsha*, 8 Nev. 137; *State* v. *Burns*, 8 Id. 251; *State* v. *Huff*, 11 Id. 17; *State* v. *Larkin*, 11 Id. 314; *State* v. *Rover*, 11 Id. 343; *State* v. *Ah Mook*, 12 Id. 369; and *State* v. *Sam Mills*, 12 Id. 401, there is certainly no excuse in incumbering the transcript on appeal with any matter not authorized by sections 450 and 480 of the criminal practice act. If the county clerks will remember that it is their duty not to insert anything in the transcript, whether asked for by counsel or not, except as provided for by said sections, and that they are not entitled to any pay for services performed in copying papers, documents or statements that are not made any part of the record in a criminal case, they would hereafter save themselves some trouble and the counties considerable expense, to say nothing of the unnecessary task so often imposed upon this court of sifting the tare from the wheat and expelling the chaff from the transcript.

The points made by appellant's counsel, that are based upon the record, will be noticed in their regular order:

1. The question of jeopardy and the power of the court to grant a new trial, although not asked for by the defendant, is settled by the former decision in this case. (*State* v. *Rover*, 10 Nev. 388.)

2. The court did not err in admitting the voluntary statement of the defendant as taken down on his preliminary examination before Job Davis, a justice of the peace in Humboldt county. The justices of the peace can select clerks *ad libitum* to perform the clerical labor of writing out the testimony taken upon the preliminary examination, but must see that they correctly perform the duty. In this case the statement was written by clerks under the direction and in the presence of the justice. It was read by one of the clerks, at the request and in the presence of the justice, to the defendant. It was corrected in every particular desired by the defendant. The defendant, before making the statement, was fully advised by the justice of all his rights. In short, the record shows that sections 152, 154, 155 and 156 of the criminal practice act (1 Compiled Laws, 1780, 1782, 1783, 1784) were in every respect fully complied with. In the absence of any evidence tending to show that the witnesses were not excluded pending the examination of defendant, as provided for in section 158 (1 Compiled Laws, 1786), we cannot presume that the justice did not conform to this provision of the statute. The interlineations in the statement were satisfactorily explained and the missing portions of the certificate properly accounted for and supplied. The provisions of the law respecting the manner in which the statement of defendant may be taken having been complied with, the statement was admissible in evidence against the defendant, upon the trial of the case, under the general principles applicable to the admissibility of confessions. (1 Greenl. on Ev., secs. 216, 224; 1 Phil. on Ev., 535; 2 Id. 242; *State* v. *Lamb*, 28 Mo. 218; *De Foe* v. *People*, 22 Mich. 224; *People* v. *Kelley*, 47 Cal. 125.) The time of introducing the statement was optional with the counsel for the prosecution.

3. The prosecuting witness, McWorthy, after testifying that he came from the camp where the homicide had been committed to Clark and Osburn's Station, and had gone from there to Mill City and to Winnemucca, where he made a complaint before a justice of the peace, accusing Rover of the murder of I. N. Sharp, was asked by counsel for the State: "What caused or induced you to make this complaint against Rover?" He answered, among other things, as follows: "By inquiries and from what Rover told me that Sharp said he was going to Wright's ranch. When I inquired for him at Osburn's ranch Mr. Clark stood there, and after Mr. Osburn saying he had not seen him, Mr. Clark he says: 'I just came from Wright's ranch, and I do not think he is there.' Mrs. Osburn then says: 'That man Rover has murdered him;' and I says: 'I guess not; he was too cowardly—wouldn't murder anything.' Mrs. Osburn says: 'It is cowards that do such things.'" The portions of this answer particularly complained of by appellant— viz: the declarations of Mrs. Osburn—were, upon motion, stricken out. It was therefore the duty of the jury to disregard them, without any special instruction from the court to that effect. Where testimony is stricken out it is, we believe, the usual custom for courts, in the trial of criminal cases, to instruct the jury to disregard the evidence, and it is perhaps the better practice, out of abundant caution, to do so; but the appellant has no cause of complaint upon this ground, unless he affirmatively shows that the court, upon request, refused to so instruct the jury. The court did not err in allowing the witness McWorthy, in answer to the question asked by counsel, to detail the efforts he had made to learn the whereabouts of the deceased. The defendant Rover, in his voluntary statement before the committing magistrate, had accused the witness McWorthy of being the murderer of Sharp, and the jury were called upon to determine, among other things, whether this accusation was true or false. The declarations of third persons were not called out by the prosecution for the purpose of being used as evidence against Rover, but were introduced simply for the purpose of explaining the conduct of the witness McWorthy,

so that the jury might determine therefrom whether he acted in good faith, or whether, being himself the real murderer, he had falsely made the charge against Rover, for the purpose of directing the attention of the public to the accused and diverting it from himself. To that extent it was proper for the witness, in detailing the steps he had taken, to state what answers were given to the inquiries made by him. (1 Greenl. on Ev., secs. 100, 101; 1 Whart. Cr. Law, sec. 663; *State* v. *Fox*, 25 N. J. 567.)

4. The objections urged by appellant's counsel, that the court erred in having the verdict read to the jury and recorded on Sunday, and in discharging the jury and designating a day upon which he would pronounce judgment, are wholly untenable. The statutes of this state expressly provide that the courts may be held on Sunday: "To receive a verdict or discharge a jury." (1 Compiled Laws, 955.) When the verdict is given, "the clerk must immediately record it in full on the minutes, and must read it to the jury and inquire of them whether it be their verdict." (1 Compiled Laws, 2043.) The power given to the court to sit on Sunday to receive the verdict, necessarily authorizes it to have the verdict then read and recorded, to discharge the jury, and make such other orders as are incident to the power given by the statute. (*McCorkle* v. *The State*; 14 Ind. 39.)

5. The court did not err in refusing to give the second instruction asked by defendant's counsel. It reads as follows: "In order to justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt. This is the fundamental rule by which the relevancy and effect of circumstantial evidence must be estimated." This instruction is copied from Wills on Circumstantial Evidence, 149. Burrill states the rule correctly, as follows: "The evidence against the accused must be such as to exclude, to a moral certainty, every hypothesis but that of his guilt of the offense imputed to him." (Burrill on Cir. Ev., 737.) He

says the rule has been otherwise stated by Wills, and without commenting upon the difference in the language adds that this rule "is the great test rule of all presumptive proof." The court in this case was fully justified in refusing the instruction upon the authority of *The State* v. *O'Connor*, 11 Nev., 416 on the ground that it had already been given in substance in the second instruction asked by the prosecution (copied from *People* v. *Cronin*, 34 Cal. 194), and the first instruction asked by defendant (copied from *People* v. *Dick*, 32 Cal. 215).

The ruling ought, however, to be sustained upon broader grounds. The words "absolutely incompatible," as contained in the instruction, in their usual signification, imply that the proof of defendant's guilt must be established beyond the possibility of a doubt. This is not the law. (*State* v. *Ferguson*, 9 Nev. 118; *State* v. *Nelson*, 11 Id. 340.) "The law," as was said by the Supreme Court of California in *The People* v. *Murray*, "requires that the facts shall not only be consistent with the guilt of the accused, but inconsistent with any other rational conclusion. A higher degree of certainty in establishing the guilt of the accused, by means of circumstantial evidence, cannot be required without rendering such evidence valueless." (41 Cal. 67.)

The judgment and order overruling defendant's motion for a new trial are affirmed, and the district court is directed to fix a day for carrying its sentence into execution.

BEATTY, J., concurring:

In regard to the third point discussed in the foregoing opinion, I consider it doubtful whether the record shows satisfactorily the materiality and relevancy of the answers made to McWorthy's inquiries in regard to the deceased. But I am satisfied that if any error was committed in admitting them, it could not possibly have injured the defendant. All that those answers (aside from those that were stricken out) had any tendency to prove was that the deceased had not been seen at places away from the mining camp subsequent to the time when, according to the de-

fendant's own statement, he had seen him killed and buried at the camp.   If the evidence was hearsay, it tended only to prove a fact conceded by defendant—that Sharp, the deceased, had not left the camp.

I concur in the judgment and in all other particulars in the opinion of the chief justice.

LEONARD, J., having been of counsel at a former trial of the above cause, did not participate in the foregoing decision.