Points decided.

[No. 893.]

## STATE OF NEVADA, RESPONDENT, v. ROBERT HAMILTON AND THOMAS LAURIE, APPELLANTS.

REASONABLE DOUBT—INSTRUCTIONS.—The court refused the following instruction asked by the defendant: "The jury is instructed that unless they are satisfied beyond a reasonable doubt that the defendants are guilty; that is to say, if you entertain a reasonable doubt upon any material point in the testimony essential to a conviction, you must give the defendants the benefit of the doubt, and acquit them:" *Held*, that the instruction was correct and ought to have been given. Upon rehearing: *Held*, that the same principles having in substance been given in other instructions asked by the defendants, the refusal of the instruction was not error. (*State* v. *O'Connor*, 11 Nev. 425, affirmed.)

INDICTMENT—DEPOSITIONS OF WITNESS TO BE INDORSED ON.—The names of witnesses whose depositions are read before the grand jury must be inserted at the foot of, or indorsed on, the indictment. (1 Comp. Laws, 1899.)

MOTION TO SET ASIDE INDICTMENT MUST BE MADE BEFORE DEMURRER OR PLEA—WAIVER.—By the provisions of sections 274-79 a motion to set aside the indictment must be made before demurrer or plea. If not so made, it will be deemed to have been waived.

TESTIMONY OF GRAND JURORS WILL NOT BE RECEIVED TO IMPEACH THEIR ACTS.—The testimony of grand jurors is not admissible to impeach their acts in finding an indictment.

INSTRUCTION—CRIME COMMITTED IN ONE COUNTY WHEN ONE OF DEFENDANTS IS IN ANOTHER COUNTY.—The court refused to give the following instruction asked by defendant Laurie: "The jury is instructed that if they believe that an attempt was made to rob, as alleged in the indictment, and that at the time such attempt was made, the defendant, Laurie, was in Eureka county, Nevada, then they cannot convict him: *Held*, in the absence of any evidence showing the facts, not to be error.

IDEM—PRINCIPAL OR ACCESSORY BEFORE THE FACT.—Admitting the facts to be, as claimed by Laurie, that a plan was arranged between Laurie and others to rob the treasure of Wells, Fargo & Co., on the road between Eureka and some point in Nye county; that Laurie was to ascertain when the treasure left Eureka, and signal his confederates by building a fire on the top of a mountain in Eureka county, which could be seen by them in Nye county, thirty or forty miles distant; that the signals were given by him and his confederates attacked the stage and attempted to rob the treasure: *Held*, that Laurie would be not only an accessory before the fact, but a principal, at least in the second degree.

IDEM.—Where several confederates act in pursuance of a common plan, in the commission of an offense, all are held to be present where the offense is committed, and all are principals.

APPEAL from the District Court of the Fifth Judicial District, Nye County.

The facts are stated in the opinion.

*Frank Owen* and *W. C. Love*, for Appellants.

The points made by counsel are all stated in the opinion of the court.

*John R. Kittrell, Attorney-general.* for Respondents.

By the Court, Beatty J. :

The defendants were convicted of an assault with intent to commit robbery, and have appealed from the judgment. A reversal is claimed upon several grounds, one of which appears to be well assigned.

The court refused the following instruction, which was requested by the defendants: "The jury is instructed that unless they are satisfied beyond a reasonable doubt that the defendants are guilty; that is to say, if you entertain a reasonable doubt upon any material point in the testimony essential to a conviction, you must give the defendants the benefit of the doubt and acquit them."

Some fault may possibly be found with the phraseology of this instruction, but it seems to us a sufficiently clear statement of the law universally applicable upon the trial of criminal charges. There is but one reason that could have justified its refusal, and that is that the court had already instructed the jury, of its own motion, to the same effect.

It is, however, a peculiarity of our criminal practice act, to which attention has been frequently called, that instructions requested of the court, and given or refused, are a part of the record, while a charge given of its own motion can only be made so by being included in a bill of exceptions. There is no bill of exceptions in this case showing what the charge of the court was, and nothing, consequently, to cure the error appearing in the record. It follows that the judgment must be reversed, a result that might perhaps have been avoided if the reason for refusing the instruction had been noted thereon. (9 Nev. 118; 11 Id. 426.)

There are some other questions presented upon this ap-

peal which may arise again in the further progress of the case, and ought, therefore, to be determined before it is remanded.

It appears that on the seventeenth of November, A. D. 1877, the defendants moved to set aside the indictment, on the ground that the names of certain witnesses whose depositions were read before the grand jury, were not indorsed thereon.

Section 229 of the criminal practice act (C. L. 1,853) reads as follows: "When an indictment is found, the names of the witnesses examined before the grand jury shall be inserted at the foot of the indictment or indorsed thereon, before it is presented to the court."

It is contended that this provision does not embrace the witnesses whose depositions have been taken by the committing magistrate and returned to the district court. Perhaps, if read by itself, it would not be held to embrace such witnesses, but section 275 (C. L. 1,899) provides explicitly that the indictment shall be set aside on the defendant's motion when (among other grounds) "the names of the witnesses examined before the grand jury, or whose depositions may have been read before them are not inserted at the foot of the indictment, or indorsed thereon." This is conclusive of one branch of the question.

But it is also provided in effect (sections 274–9) that the motion to set aside the indictment must be made before demurrer or plea, or it will be deemed to have been waived. The bill of exceptions in this case does not show that the motion was made before plea, and the clerk has failed to copy into the record the minutes of the plea, so that it does not appear whether it was entered before or after the seventeenth of November, the date of the motion. But as the defendants would be entitled to have this omission of their plea corrected on a suggestion of diminution of the record, and as such correction would probably show that their motion was made in time, we shall assume that it was so made for the purpose of determining whether the court erred in overruling it.

The motion was supported by the affidavit of Granger,

one of the counsel for defendants, and by an offer to prove the facts alleged by the testimony of the grand jurors themselves. The affidavit of Granger is not included in the bill of exceptions, and we cannot decide whether it was competent or sufficient to sustain the motion. If it was presented before demurrer or plea, and did prove by competent and satisfactory testimony the facts alleged as the grounds of the motion, then the indictment should be set aside. But if the affidavit was not sufficient to sustain the motion it was properly overruled, for the testimony of the grand jurors was not competent to impeach their own indictment, and the court did not err in rejecting it. (See *State* v. *Logan*, and authorities cited, 1 Nev. 516; *State* v. *Baker*, 20 Mo. 338; *State* v. *Beebe*, 17 Minn. 241; *State* v. *Davis*, 41 Iowa, 311.)

It may be said that unless the testimony of the grand jurors is received in support of this motion the right to make it is nugatory. This may or may not be so, but it is certain that the principle that a juror shall not be allowed to impeach his own act is now generally if not universally upheld, and it is equally certain that the oath of a grand juror cannot be received in favor of the facts here alleged without allowing him to impeach his own act, or to show that he voted against finding the bill, which is a thing positively forbidden. (C. L. 1838.) The statute provides for just one case (C. L. 1839) in which a grand juror may disclose what has transpired in the jury-room, and by implication excludes all other cases.

We cannot say that the district court erred in denying the challenge to the panel of the petit jury, because it does not appear from the bill of exceptions that the challenge was in writing, nor that it was taken before a juror was sworn. (C. L. 1948; *State* v. *Millian*, 3 Nev. 409.) Besides, it does not appear what, if any, evidence was offered in support of the challenge; and in the absence of any satisfactory evidence to sustain it the court could not do otherwise than deny it. (*State* v. *Rigg*, 10 Nev. 289.)

Neither can we say that there was any error in overruling the motion of defendant, Laurie, that he be discharged on

the ground that the evidence showed that he was in Eureka county when the crime alleged in the indictment was committed. The evidence is not in the record, and there is nothing to show that Laurie was in Eureka county when the crime was committed.

The motion to discharge Laurie having been overruled, he requested the court to give the following instruction, which was refused: " The jury is instructed that if they believe that an attempt was made to rob, as alleged in the indictment, and that at the time such attempt was made the defendant, Laurie, was in Eureka county, Nevada, then they cannot convict him."

The attempt to rob is alleged to have been committed in Nye county, where the indictment was found; and this exception presents the question whether, under any circumstances, a defendant could be legally convicted in Nye county upon an indictment found in Nye county, for an offense committed in Nye county at a time when the defendant was in Eureka county. It is contended that if Laurie was in Eureka county when the assault was committed in Nye county, he could only have been connected with it as an accessory before the fact, and that, as such, he could not be indicted in Nye county jointly with the active participants. Counsel, in support of this proposition, rely on section 91 of the criminal practice act (C. L. 1719), which is as follows:

" In the case of an accessory before or after the fact in the commission of a public offense, the jurisdiction shall be in the county where the offense of the accessory was committed, notwithstanding the principal offense was committed in another county."

Without determining whether this section is to any extent qualified or controlled by other statutory provisions—conceding that according to its plain terms an accessory before the fact can only be indicted and tried in the county where the offense was committed—and assuming that the testimony in this case tended only to show that Laurie was an accessory before the fact, it still does not follow that the instruction was not correctly refused. If Laurie counseled

and advised the attempted robbery while he was in Nye county, his absence from the county when the attempt was made does not prevent him from being indicted and tried jointly with those directly concerned. If the refusal of this instruction could be justified on no other ground, we would presume in favor of the correctness of the ruling of the district court, that the evidence tended to prove the case supposed.

But it is not true that Laurie, if in Eureka county when the attempt to rob was made in Nye county, could only have been connected with the crime as an accessory before the fact.

Our statute concerning crimes and punishments defines an accessory as follows (C. L., 2316):

"Sec. 10. An accessory is he or she who stands by and aids, abets or assists, or who not being present aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed or considered as principal, and punished accordingly."

This definition includes not only an accessory before the fact (one who has advised and encouraged), but also an accessory at the fact or principal in the second degree (one who stands by and aids, abets or assists). (See 1 Bishop's Cr. Law, sec. 648 *et seq.*

By the latter clause of the section it is enacted that both shall be deemed and considered principals, and this taken in connection with section 252 of the Criminal Practice Act (C. L., 1876), might be held to have abolished all distinctions for every purpose between principals of the first and second degree and accessories before the fact, were it not that section 91, above quoted, seems to make an exception in favor of accessories before the fact so far as the local jurisdiction of the offense is concerned.

Section 252 declares that "no distinction shall exist between an accessory before the fact and a principal, or between principals in the first and second degree, in cases of felony, and all persons concerned in the commission of a felony, whether they directly commit the act constituting

the offense or aid and abet in its commission, though not present, shall hereafter be indicted, tried and punished as principals."

There is an apparent incongruity between this section and section 91, which was commented upon in the *State* v. *Chapman* (6 Nev. 329, 330.) But in our opinion the utmost effect that can be given to section 91 is to say that an accessory before or after the fact must be tried in the county where his offense was committed. An accessory *at the fact* or principal in the second degree should always be indicted and tried where the offense was committed.

Now it is a matter within the judicial knowledge of the court that Eureka county is divided from Nye county merely by an imaginary line, and it is quite possible that Laurie might have stood in Eureka county in sight and hearing of what was done by Hamilton in Nye county. He may have been near enough to render direct and immediate assistance. This is another case in which the instruction in question would have been improper.

But as the only purpose of this discussion is to settle the question which will necessarily arise when the case comes to be re-tried, it will be as well to assume that the evidence against Laurie was of the character suggested in the argument.

We will suppose that it tended to prove that a plan was concerted between Hamilton, Laurie and others, to rob the treasure-box of Wells, Fargo & Co., on the road from Eureka to some point in Nye county; that the part of Laurie was to ascertain when the stage left Eureka, and to make a signal to his confederates by building a fire on top of a mountain in Eureka county, which could be seen by them from a point in Nye county, thirty or forty miles distant; that he did inform himself of the departure of the messengers with the treasure; that he gave the concerted signal; that Hamilton and Davis thereupon attacked the stage; that Davis was killed and one of the messengers wounded, and that the robbery failed only because of too stout a resistance on the part of those in charge of the treasure.

If such was the character of the evidence against Laurie,

we are satisfied that the instruction ought to have been re-fused. In the case supposed, Laurie would be not only an accessory before the fact (as having counseled, advised and encouraged the commission of the crime), but he would be a principal at least in the second degree.

Where several persons confederate together for the pur-pose of committing a crime which is to be accomplished in pursuance of a common plan, all who do any act which contributes to the accomplishment of their design are prin-cipals, whether actually present at its consummation or not. They are deemed to be constructively present though in fact they may be absent. (1 Bishop Cr. Law, sec. 650.)

In a note to this section Mr. Bishop says: "In an English jury case, Creswell, J., on consultation with Patterson, J., ruled that if one of two confederates unlocks the door of a room in which a larceny is to be committed, then goes away and the other confederate comes and steals the goods, the former is not a principal in the theft. (*Reg.* v. *Jeffries*, 3 Cox C. C. 85.) I doubt the soundness of this ruling. If sustainable, it must be on the ground that the unlocking of the door constituted no part of the crime. But it seems to me that it was a part of the criminal transaction, distinctly contributing to the end. In Ohio, one of several confede-rates enticed the owner of a store a mile away and detained him while the others broke open the store and took the goods; and the court held, it seems to me correctly, that he was a principal. The decision was put upon the ground that he was constructively present. He not merely advised, but bore a part in the criminal transaction. That consti-tutes a principal, whether we call it being constructively present or not." (*Breese* v. *State*, 12 Ohio State, 146; see also *Hess* v. *The State*, 5 Ohio, 12; *Reg* v. *Vanderstein et al.*, 10 Cox's Cr. Cases, 177; *Commonwealth* v. *Lucas*, 2 Allen, 170; *Tate and another* v. *The State*, 6 Blackf. 110; *Rex* v. *Lockett*, 7 Carrington and Paine, 300; *Rex* v. *Passey Meadows et al.*, Id. 281; *Rex* v. *Kirkwood et al.*, 1 Moody's Crown Cases, 304; *Rex* v. *Bingley et al.*, 1 Russ. and Ryan Crown Cases, 446.)

These cases all support the proposition above stated, that

where several confederates act in pursuance of a common plan, in the commission of an offense, all are held to be present where the offense is committed, and are all principals.

Our conclusion is that upon the case suggested the instruction was correctly refused.

The judgment is reversed for the error in refusing the first instruction above quoted, and the cause is remanded for further proceedings.

### RESPONSE TO PETITION FOR REHEARING.

A rehearing was granted in this case upon suggestion by the attorney-general that a corrected transcript of the record would show that the district court gave to the jury, at the request of the defendents, instructions precisely equivalent to that for the refusal of which we decided that the judgment must be reversed. It now appears that the following instructions, asked by the defendants, were allowed:

"The jury is instructed that this case is one wherein the evidence is entirely circumstantial, and that unless it is inconsistent with any other rational conclusion than that the defendants are guilty, then the jury must find the defendants not guilty."

"The term 'reasonable doubt' is one often used. The jury are instructed that they must be satisfied from the evidence of the guilt of the defendants, or either of them, beyond a reasonable doubt, before the jury can legally find him guilty of the crime charged against him. The jury shall be satisfied from the evidence, to a moral certainty, and beyond a reasonable doubt, that the defendants, or one of them, and no other or different person or persons, committed the alleged offense."

We think these instructions were as clear and full and favorable to the defendants as the instruction refused; and in substance amounted to the same thing. Therefore the refusal of that instruction was not error (*State* v. *O'Connor*, 11 Nev. 425); and the judgment appealed from should be affirmed.

It is so ordered.